IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHERYLE L. BAKER, )
 )
      Plaintiff, )
 )
vs. )   Case No. 16-cv-1358-JPG-CJP
 )
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
 )
      Defendant.[1] )

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Cheryle Baker, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Ms. Baker applied for benefits in May 2013 alleging disability beginning on July 22, 2010. She later amended the alleged date of onset to July 23, 2013. After holding an evidentiary hearing, ALJ Lisa Leslie denied the application on January 7, 2016. (Tr. 16-28.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision subject to judicial review. (Tr. 1.)

Administrative remedies have been exhausted, and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1.    The ALJ failed to account for plaintiff's limitations in ability to maintain

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/ commissioner.html (visited Feb. 7, 2017). She is automatically substituted as defendant in this case. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

concentration, persistence or pace in assessing plaintiff's mental residual functional capacity (RFC).

2. The hypothetical question posed to the vocational expert (VE) was too vague.

**Applicable Legal Standards**

To qualify for DIB or SSI benefits, a claimant must be disabled within the meaning of the applicable statutes. In this context, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).[2]

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step

---

[2] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, *et seq.*, and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, *et seq.*, and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925, detailing medical considerations relevant to an SSI claim relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

> assesses an applicant's residual functional capacity ("RFC") and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008); *accord Weatherbee v. Astrue*, 649 F.3d 565, 568-69 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984); *see also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by

substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, *i.e.*, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

**<u>The Decision of the ALJ</u>**

ALJ Leslie followed the five-step analytical framework described above. She determined that plaintiff had not worked since July 23, 2013. She was insured for DIB through June 30, 2016.[3]

The ALJ found that plaintiff had severe impairments of coronary artery disease, peripheral vascular disease, hypertension, and bipolar disorder, and that these impairments did not meet or

---

[3] The date last insured is relevant only to the claim for DIB.

equal a listed impairment. At this step, the ALJ determined that plaintiff had moderate difficulties in both social functioning and ability to maintain concentration, persistence or pace.

The ALJ found that Ms. Baker had the RFC to perform work at the light exertional level with some physical and mental limitations. The mental limitations were that plaintiff was limited to performing simple, routine and repetitive tasks, not at a fast pace as in an assembly line, and no more than frequent interactions with co-workers and the public.[4]

Based upon the testimony of a VE, the ALJ found that plaintiff was capable of performing her past work as a cashier. In the alternative, she was capable of performing other jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period. As plaintiff addresses only her mental limitations, a discussion of the medical evidence related to her physical condition is unnecessary.

1. **Agency Forms**

The amended date of onset was plaintiff's fiftieth birthday. (Tr. 213.) She attended school through the ninth grade and later took a certified nurse training course. (Tr. 219.) She alleged difficulty with concentration and completing tasks. (Tr. 230.) She had worked in the past as a cashier in a gas station, a "CNA" in a nursing home, a sandwich maker in a Subway sandwich shop, and a stocker/cashier in a Dollar Store. (Tr. 219.)

---

[4] The agency defines frequent as "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983).

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in December 2015. (Tr. 36.)

Plaintiff testified that she was unable to work because she could not stand or walk for very long. She had constant pain in her legs. She could only sit for a few minutes. (Tr. 44-46.) She had been diagnosed with bipolar disorder and depression. It made her think of "crazy things" like suicide and hurting other people. She cried every day. She had a short temper and got angry with people. Her memory and concentration were bad. She could only concentrate for 15 or 20 minutes. (Tr. 47-49.)

A VE also testified. The ALJ asked her a hypothetical question that corresponded to the ultimate RFC findings. The VE testified that this person could do plaintiff's past job as a cashier. She could also do other jobs such as routing clerk, mail clerk, and cafeteria attendant. (Tr. 52-54.)

Plaintiff's counsel asked no questions of the VE. (Tr. 55.)

3. **Medical Records**

Plaintiff was diagnosed with depression as far back as April 2010. (Tr. 331-332.)

In May 2013, a physician's assistant (PA) noted that her anxiety symptoms were "on and off." She had stopped taking Celexa as she did not feel it benefitted her. The PA prescribed Wellbutrin for smoking cessation, noting it might help with her anxiety as well. (Tr. 293.)

Dr. Christopher Loynd saw plaintiff for mental health problems from at least June 2014 through at least October 2015. (Tr. 767-786.) The records appear to be incomplete. In June 2014, he noted that she suffered from anxiety and depression. She was angry, irritable, and crying all the time. He started her on Latuda, which did not work very well for her. (Tr. 783-84.) In

July 2015, plaintiff reported symptoms of mania (irritability, decreased need for sleep, impulsivity, rapid speech, and racing thoughts), anxiety, and depression. Among the symptoms associated with depression were lack of motivation and poor concentration. He diagnosed bipolar disorder and prescribed Trazodone and Amitriptyline. (Tr. 778-79.) In October 2015, she had no symptoms of mania or depression. Her medications were continued. She was to return to Dr. Loynd in December 2015. There are no further office notes from this provider. (Tr. 767-71.)

**4.     State Agency Consultant's Mental RFC Assessment**

In September 2013, M.W. DiFonso, Psy.D, assessed plaintiff's mental RFC based on a review of the file contents. She used an electronic version of an agency form that is commonly used for this purpose in social security cases. (Tr. 63-65.) The form consists of a series of questions and a list of mental activities. The consultant is asked to rate the applicant's limitations in these areas.

Dr. DiFonso answered "yes" to the question, "Does the individual have sustained concentration and persistence limitations?" She rated her as "moderately limited" in ability to carry out detailed instructions and in ability to maintain attention and concentration for extended periods. She also rated plaintiff as moderately limited in ability to accept instructions and respond appropriately to criticism from supervisors. In the section for narrative remarks, Dr. DiFonso wrote, "Cognitive and attentional skills are intact and adequate for simple one-two step as well as semi-skilled work tasks."

In February 2014, a second state agency consultant completed a Mental RFC Assessment form. His responses were exactly the same as Dr. DiFonso's.(Tr. 90-92.)

## Analysis

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence or pace. (Tr. 20.) She made this finding at step three of the sequential analysis when determining whether plaintiff's mental impairments meet or equal a listed impairment. She noted that, while the step three determination is not a mental RFC assessment *per se*, the ultimate RFC assessment "reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (Tr. 20.) However, neither the hypothetical question posed to the VE nor the RFC assessment mentioned a limitation in concentration, persistence or pace. Rather, the ALJ limited plaintiff to "simple, routine tasks, and repetitive tasks not at a fast pace as in an assembly line," and no more than frequent interactions with co-workers and the public.

The Seventh Circuit Court of Appeals has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart*, a case decided in 2009, the Court observed, "The Commissioner continues to defend the ALJ's attempt to

account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court of Appeals has reaffirmed that position several times in recent years. *O'Connor-Spinner, supra; Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015)*; Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016).

The Commissioner defends the ALJ's decision by arguing that none of plaintiff's doctors assessed any limitations related to concentration, persistence or pace. That is true, but irrelevant; the ALJ himself found that she had moderate limitations in that area and said that her RFC assessment would reflect those limitations. The Commissioner's attempt to distinguish *Yurt* on this basis is unavailing.

Citing *Capman v. Colvin*, 617 F. App'x 575, 578-79 (7th Cir. 2015), the Commissioner also argues that plaintiff's limitations in concentration, persistence or pace were adequately addressed by the exclusion of fast-paced work because her concentration, persistence or pace problems stemmed from her anxiety symptoms. However, the ALJ did not say that she concluded that her limitations in concentration, persistence or pace arose from her anxiety. It is "improper for an agency's lawyer to defend its decision on a ground that the agency had not relied on in its decision...." *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010). Further, *Capman* is a nonprecedential order. The Commissioner also argues that the limitation to only frequent interaction with co-workers and the public was also meant to accommodate her concentration difficulties. However, it is clear from the ALJ's decision that the limitation on interaction with other people was designed to address plaintiff's moderate limitation in social functioning. (Tr. 19-20, 26.)

The bottom line here is that the ALJ found that Ms. Baker had moderate difficulties in maintaining concentration, persistence or pace. It is true, as the Commissioner points out, that she made this finding at step three. Regardless, she represented that the RFC assessment would reflect the degree of limitation that she found at that step. Binding Seventh Circuit precedent establishes that a limitation to simple, routine tasks or to unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace.

In view of the disposition of plaintiff's first point, it is not necessary to analyze her second point.

The ALJ's assessment of plaintiff's RFC was not supported by substantial evidence. Therefore, this case must be remanded to the Commissioner for rehearing. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Cheryle L. Baker's application for DIB and SSI benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**
**DATE:   September 7, 2017**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**